**Motion Denied; Reversed and Rendered and Memorandum Opinion filed June 30, 2026.**



In The

# Fifteenth Court of Appeals

## NO. 15-25-00148-CV

**TEXAS EDUCATION AGENCY, Appellant**

**V.**

**EXCELLENCE 2000, INC., Appellee**

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2022-55524**

## MEMORANDUM OPINION

Texas Education Agency ("TEA") appeals the trial court's denial of its plea to the jurisdiction asserting sovereign immunity. TEA filed its plea in response to Appellee Excellence 2000, Inc.'s ("Excellence") petition alleging an unlawful taking of two properties on which it operated charter schools. We conclude that TEA obtained the properties pursuant to its colorable contract rights and thus is immune from Excellence's lawsuit. We therefore reverse the trial court's order and render

judgment for TEA.

## BACKGROUND

Excellence is a Texas nonprofit organization that operated an open-enrollment charter school in Houston and Dallas pursuant to a Contract for Charter, dated September 28, 1998 (the "Charter Agreement"), with TEA. Between 1998 and 2000, Excellence began to raise private funds to purchase property to operate the charter school. Excellence alleges that it also began receiving state funds for the charter school in 2000. Excellence purchased property in Houston for the Children First Academy of Houston in November 2001 and, later, property in Dallas for the Children First Academy of Dallas in 2007 (both Houston and Dallas properties, the "Properties").

In 2015, TEA investigated Excellence and concluded that Excellence had committed multiple violations of the Charter Agreement. In 2016, TEA informed Excellence of its decision not to renew the Charter Agreement. After multiple failed requests for Excellence to return the charter school assets, TEA took possession of the Properties.

After unsuccessfully suing TEA in a Travis County court in 2016 and a subsequent bankruptcy filing in 2021, Excellence and Sherwin Allen, the President of the Board of Directors for Excellence at the time, sued TEA in Harris County on September 1, 2022, alleging a taking and common law fraud. Excellence argued that, by seizing the Properties after revoking the Charter Agreement, TEA had committed an unlawful taking under Article 1, Section 17 of the Texas Constitution. Tex. Const. art. 1, § 17.

TEA filed its first plea to the jurisdiction on April 4, 2023, arguing that Excellence's fraud claim was barred by sovereign immunity, and that Excellence did not plead a viable takings claim. TEA argued that it took possession of the properties

pursuant to Section 12.128 of the Texas Education Code, which allows the State to take control of certain property after revoking the charter if such property was purchased with state funds. *See* Tex. Educ. Code § 12.128. Excellence filed its response to the plea, asserting that the "parties dispute whether state funds were used to purchase the two properties that are the subject of the takings claim." Attached to Excellence's response were, among other items, (1) financial records for the two schools, and (2) an affidavit from Sherwin Allen, in which he stated that only private funds were used to purchase the properties (the "2023 Affidavit"). The trial court denied the first plea on April 4, 2023.

TEA filed its first notice of interlocutory appeal on May 16, 2024, after the twenty-day filing deadline under the Texas Rules of Appellate Procedure. Tex. R. App. P. 26.1(b), 28.1(a). Without addressing the merits, the First Court of Appeals dismissed the appeal as untimely. *Tex. Educ. Agency v. Excellence 2000, Inc.*, No. 01-24-00368-CV, 2024 WL 3817123, at *1–2 (Tex. App.—Houston [1st Dist.] August 15, 2024, no pet.) (per curiam) (mem. op.).

After this denial and a subsequent discovery period, TEA filed Special Exceptions on February 26, 2025, challenging Excellence's fraud claim and Sherwin Allen's standing. The trial court granted the Special Exceptions on April 30, 2025. TEA filed its second plea to the jurisdiction on March 11, 2025. Pursuant to the order granting the Special Exceptions, Excellence filed its amended petition on June 3, 2025, removing its fraud claim and Allen as a party. TEA then filed its Amended Reasserted Plea, which adopted and incorporated its second plea.

TEA's second plea introduced new challenges to jurisdiction, including its assertions that (1) Excellence's takings claim was a "disguised trespass to try title claim" that did not waive immunity, (2) Excellence lacked standing to bring the takings claim, and (3) the takings claim was moot. TEA also introduced new

3

evidence consisting of: (1) Excellence's petition from a prior lawsuit with TEA in Travis County, including a prior affidavit from Sherwin Allen (the "2016 Affidavit") stating that the Houston property was only "partially paid for with non-public funds," (2) filings from Excellence's 2016 bankruptcy proceeding, (3) Excellence's sworn Application for Private School Property Tax Exemption for 2001-2002 (the "Application"), and (4) pleadings in a separate 2023 Harris County case showing that Excellence, Allen, and his wife received $50,000 for an easement on the Houston property. In its Travis County petition, Excellence had stated that it used $565,000 of state funds to purchase the Houston property. TEA also attached the Charter Agreement to its second plea, as well as its Final Investigative Report and Excellence's response.

The trial court's hearing on the second plea took place July 18, 2025, [1] which resulted in another denial. TEA appealed to this Court. Excellence filed a motion to dismiss the appeal.

## MOTION TO DISMISS

As a preliminary matter, we address Excellence's motion to dismiss TEA's appeal. Excellence argues that TEA's appeal was untimely filed under the Texas Rules of Appellate Procedure. *See* Tex. R. App. P. 26.1(b). Excellence further argues that the trial court's second denial order was based on a reconsideration of TEA's first plea to the jurisdiction, and that the second order is the "exact same denial order as the first." Excellence asserts that, by challenging an identical order, TEA is attempting to "manufacture jurisdiction" by challenging the first denial on reconsideration. Excellence acknowledges that "some additional disputed facts were

_____

[1] At the hearing, Excellence did not dispute that assets belonging to the charter school such as books, desks, chairs, etc. would revert back to the State. Excellence only contended that it owned the two tracts of real property and could keep the Properties after the charter's revocation.

4

alleged," but that the legal issues remained the same in both pleas.

TEA contends that Excellence's motion should be denied because the second plea "introduced new evidence and jurisdictional bases." TEA asserts that its newly raised title dispute, standing, and mootness arguments in its second plea offer distinct legal issues not present in the first plea. Further, TEA notes that it presented new evidence, including (1) Excellence's pleadings and affidavit in its 2016 lawsuit and 2021 bankrupt proceeding, (2) the Application, and (3) a record of a payment for an easement on the Houston property. According to TEA, the new evidence and legal issues make its second plea substantially different from the first and, thus, make the order denying that second plea appealable.

Generally, a governmental unit may appeal from a trial court's denial of its plea to the jurisdiction. Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). To do so, the party must file its notice within twenty days of the date that the trial court signed the order. Tex. R. App. P. 26.1(b), 28.1(a). The Texas Supreme Court has held that when an "amended plea was substantively the same as the earlier plea, the amended plea was a motion to reconsider the earlier plea and time had expired for interlocutory appeal from it." *City of Hous. v. Est. of Jones*, 388 S.W.3d 663, 664 (Tex. 2012) (per curiam). In *Estate of Jones*, the City of Houston did not appeal after the trial court denied its original plea, but later filed an amended plea after the deadline to appeal the first had lapsed. *Id.* The City's amended plea "relied on the same bases as it did in its 2006 plea, but presented an additional argument." *Id.* at 665. The Texas Supreme Court concluded that the "court of appeals did not have jurisdiction to consider any part of the merits of the interlocutory appeal." *Id.* at 667. The Court reasoned that while the City "made a new argument in its amended plea to the jurisdiction," it did "not assert a new ground" or "raise a new issue." *Id.* at 666–67. Thus, "the amended plea was substantively a motion to reconsider the denial of its

[original] plea." *Id.* at 667.

On the other hand, the Texas Supreme Court has found jurisdiction over a second appeal when a second motion "raised new and distinct grounds for relief." *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 788 (Tex. 2019). In *Scripps*, a newspaper company filed a second summary judgment motion after its first motion lost on appeal. *Id.* at 787. The Texas Supreme Court considered whether "the Newspaper's second motion for summary judgment [was] essentially an untimely motion for rehearing raising issues that were, or could have been, raised in the Newspaper's first interlocutory appeal." *Id.* at 788.[2] The Newspaper's first plea addressed the public figure and actual malice elements of the plaintiff's defamation claim. *Id.* at 789. The second plea asserted other grounds such as the truthfulness of the statements, non-actionable opinion, and privilege. *Id.* The court held that "[a]lthough the second motion raised issues related to the First Amendment, it raised new and distinct grounds for relief, which entitled the Newspaper to further interlocutory review." *Id.* The court also noted that nothing in the statutory language of section 51.014 "limits a party to only one appeal." *Id.*

Here, in its first plea, TEA argued against the takings claim only on the basis that Excellence failed to plead a viable claim waiving immunity. Upon introducing new evidence in its second plea, TEA included additional challenges to the takings claim, including standing, mootness, and an assertion that the claim was actually one for trespass to try title. Unlike the City in *Estate of Jones*, TEA does more than merely offer new arguments—TEA asserts additional grounds, including certain wholly different jurisdictional concepts. *See Grossman v. Wolfe*, 578 S.W.3d 250,

---

[2] While *Scripps* concerned a summary judgment motion, appealable under subsection 51.014(a)(6), rather than a plea to the jurisdiction under subsection 51.014(a)(8), the Texas Supreme Court noted that the "same analysis applie[d]" to both. *Scripps*, 573 S.W.3d at 789; Tex. Civ. Prac. & Rem. Code § 51.014(a)(6), (8).

257–58 (Tex. App.—Austin 2019, pet. denied) ("[S]tanding and sovereign immunity, while both components of subject matter jurisdiction, are entirely different jurisdictional concepts."). TEA's second plea, thus, raises certain "new and distinct grounds for relief" not present in its first plea. *Scripps*, 573 S.W.3d at 789. Consequently, we decline to recognize TEA's appeal as an attempt to simply "manufacture jurisdiction" or reconsider the denial of its first plea. And like *Scripps*, we find nothing in the statutory language limiting TEA to only one appeal. *Id.* at 789. We therefore deny Excellence's motion to dismiss.

## STANDARD OF REVIEW AND GOVERNING LAW

### I.     Plea to the Jurisdiction

Whether the trial court has jurisdiction is a question of law subject to de novo review. *See Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). A plea to the jurisdiction can take two forms: (1) a challenge to the plaintiff's pleadings regarding the allegations of jurisdictional facts, or (2) an evidentiary challenge to the existence of jurisdictional facts. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). Thus, the "plea may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).

When considering a plea to the jurisdiction, our analysis begins with the live pleadings. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). We first determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In doing so, we construe the pleadings liberally in favor of the plaintiff, and unless challenged with evidence, we accept all allegations as true. *Id.* at 226–27. The plea must be granted if the plaintiff's pleadings affirmatively negate the existence of jurisdiction or if the defendant presents undisputed evidence that

negates the existence of the court's jurisdiction. *Heckman*, 369 S.W.3d at 150.

When a jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine whether a fact issue exists. *Miranda*, 133 S.W.3d at 227. In evaluating an evidentiary plea to the jurisdiction, the standard of review "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. The plaintiff bears the burden to allege facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020). The evidence is reviewed in the light most favorable to the nonmovant to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552 (Tex. 2019). If the evidence creates a fact question regarding the jurisdictional issue, the trial court may not grant the plea, and the fact issue will be resolved at trial by the fact finder. *Miranda*, 133 S.W.3d at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228.

## II. Texas Education Code

Generally, the Texas Education Code "directs the state to take possession . . . of charter-school property that was purchased or leased with state funds." *Tex. Educ. Agency v. Acad. of Careers and Techs., Inc.*, 499 S.W.3d 130, 135 (Tex. App.—Austin 2016, no pet.) (citing Tex. Educ. Code § 12.128). Section 12.128 states, in relevant part:

> (a) Property purchased with funds received by a charter holder under Section 12.106:
>
> > (1) is considered to be public property for all purposes under state law;
> >
> > (2) is property of this state held in trust by the charter holder for

8

the benefit of the students of the open-enrollment charter school; [and]

(3) may be used only for a purpose for which a school district may use school district property[.]

. . .

(b) If at least 50 percent of the funds used by a charter holder to purchase real property are funds received under Section 12.106 before September 1, 2001, the property is considered to be public property to the extent it was purchased with those funds.

(b-1) Subject to Subsection (b-2), while an open-enrollment charter school is in operation, the charter holder holds title to any property described by Subsection (a) or (b) and may exercise complete control over the property as permitted under the law.

. . .

(c) The commissioner shall:

(1) take possession and assume control of the property described by Subsection (a) of an open-enrollment charter school that ceases to operate; and

(2) supervise the disposition of the property in accordance with this subchapter.

Tex. Educ. Code § 12.128.

## ANALYSIS

In three issues, TEA argues that (1) Excellence's takings claim is actually an artfully pleaded trespass-to-try-title claim that is barred by sovereign immunity, (2) Excellence has not properly pleaded a valid takings claim, and (3) Excellence lacks standing to bring the takings claim. In addition, Excellence argues that these issues go to the merits of the takings claim, and that we should therefore not consider these arguments to decide the plea.

**I.    TEA's Jurisdictional Challenge Implicates the Merits of Excellence's Takings Claim.**

Excellence asserts that "TEA's arguments focus on the merits of the case and lack jurisdictional analysis." Excellence further asserts that "[i]n analyzing the defendant's plea to the jurisdiction, the court does not look at the merits of the plaintiff's case but considers only the pleadings and the evidence pertinent to the jurisdictional inquiry." In its reply brief, TEA contends that this suit presents a circumstance in which the merits overlap with the jurisdictional question, and that a court may properly consider evidence to resolve the jurisdictional issues raised.

We agree with TEA. As stated above, it is well established that a court may review evidence outside the pleadings to determine whether a fact issue exists. *Miranda*, 133 S.W.3d at 227. Further, recent precedent in this Court has established that a defendant may present an evidentiary challenge to the merits of a takings claim to decide the jurisdictional issue. *See Curadev Pharma Pvt. Ltd. v. Univ. of Tex. Sw. Med. Ctr.*, 721 S.W.3d 90, 98 (Tex. App.—15th Dist. 2025, pet. filed) ("If a defendant files a plea to the jurisdiction and establishes that the plaintiff has not alleged these elements and cannot amend its petition to do so, or if the defendant negates one of the elements in an evidentiary plea, the trial court must dismiss the takings claim."). We may therefore analyze TEA's arguments by looking to both its challenges to the pleadings as well as its evidentiary challenges to the elements of Excellence's takings claim if necessary, even though the merits of this claim may be implicated.

**II.    Excellence Has Not Creatively Pleaded a Trespass-to-Try-Title Claim.**

In its first issue, TEA argues that Excellence's takings claim is a creatively pleaded trespass-to-try-title claim that is barred by sovereign immunity. TEA asserts that Excellence's pleadings in the trial court establish that the crux of its claim is the

ownership dispute of the two properties. TEA also looks to the prior Travis County lawsuit and bankruptcy proceeding as evidence that property ownership lies at the center of Excellence's claim.[3] Excellence responds that title to the properties is not disputed in this case.

The State of Texas is generally immune from suit "[a]bsent an express waiver of its sovereign immunity." *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). "But sovereign immunity does not shield the State from a claim based upon a taking under Article I, section 17 of the Texas Constitution, known as the 'takings clause.'" *Id.* On the other hand, a suit for trespass to title against the State is "barred by sovereign immunity absent legislative consent." *Tex. Parks and Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 390 (Tex. 2011). Generally, "a trespass to try title claim is the exclusive method in Texas for adjudicating disputed claims of title to real property." *Id.* at 389; Tex. Prop. Code § 22.001(a) ("A trespass to try title action is the method of determining title to lands, tenements, or other real property."). The Texas Supreme Court has warned against disguising a trespass to try title claim as a takings dispute to circumvent immunity, stating that "[c]reative pleading cannot be used to effect the loss or waiver of the State's sovereign immunity." *Sawyer Tr.*, 354 S.W.3d at 392.

*Sawyer Trust* is instructive for distinguishing between a takings claim and a title dispute. In that case, the Sawyer Trust sued the Texas Parks and Wildlife Department "for a declaratory judgment that the Salt Fork [of the Red River] was not navigable." *Id.* at 387. The Department filed a plea to the jurisdiction asserting

---

[3] We acknowledge that other courts of appeals have recognized that "[p]leadings in another case that are inconsistent with a party's position in a present action are quasi-admissions, which are treated as some evidence." *Daimler-Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 718 (Tex. App.—Austin 2000, pet. dism'd w.o.j.); *DowElanco v. Benitez*, 4 S.W.3d 866, 871 (Tex. App.—Corpus Christi-Edinburg 1999, no pet.). The parties do not dispute whether TEA may properly offer Excellence's statements in previous court proceedings as evidence here.

sovereign immunity. *Id.* The Department later asserted that the fork was navigable, upon which the Sawyer Trust amended its pleadings to include a takings claim. *Id.* The Department argued that the takings claim was not valid "because the trust seeks only declaratory and injunctive relief based on the dispute over title" to the riverbed. *Id.* at 390. Identifying the difference between a takings claim and trespass to try title claim, the Texas Supreme Court stated:

> In a trespass to try title or to quiet title action, an owner sues to recover immediate possession of land unlawfully withheld. A prevailing party's remedy is *title to, and possession of, the real property interest* at issue in the suit.

> On the other hand, a takings claim is one in which a landowner alleges that the government has taken his property for public use without permission, *for which he seeks compensation. The available remedy is a key distinction between the two*. While one suit quiets title and possession of the property, the other allows only for just compensation for the property taken or used—the prevailing party does not regain use of land lost to the public's use, or win possession of it.

*Id.* at 391 (emphasis added) (quoting *Porretto v. Patterson*, 251 S.W.3d 701, 708 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citations omitted)).

The Texas Supreme Court held that the Sawyer Trust's allegations did not constitute a takings claim. *Id.* at 392. Key to the court's holding was the fact that the Sawyer Trust did not seek monetary damages and, thus, did not seek just compensation from the Department. *Id.* The court therefore stated that the "question of who owns the property [was] the only issue and title and possession [were] the only available remedies . . . ." *Id.*

Here, unlike the Sawyer Trust, Excellence seeks just compensation for its takings claim. Excellence states in its amended pleadings that it seeks "monetary relief over $1,000,000" and "maximum damages" of "$7,000,000 from calculation of the recorded appraised value of two real properties wrongfully taken from

Plaintiff by Defendant . . . ." Absent from Excellence's pleadings is any request to recover title or possession of the properties. *See id.* ("Generally, a party is not entitled to relief that it does not request." (citing *State v. Brown*, 262 S.W.3d 365, 370 (Tex. 2008))). Thus, under *Sawyer Trust*'s distinction, Excellence's request for compensation instead of a declaration of title or ownership demonstrates that its takings claim is not a creatively pleaded claim for trespass to try title.

In support of its argument, TEA emphasizes in its original and reply briefs that this suit marks Excellence's third litigation concerning ownership of the properties. TEA notes that, during the 2016 Travis County lawsuit, Excellence admitted that TEA "claimed ownership" when it stated that it was "directed to execute [sic] deeds to the property in favor of the Texas Education Agency and to turn over all keys to the buildings, vehicles, and other similar property." Additionally, Excellence admitted to the bankruptcy court in the 2021 proceeding that "[t]he ownership of the Properties [was] the critical issue in [the] case." TEA notes that the trial court below had distilled the takings claim to an ownership dispute as well when it stated at a hearing that its primary question was whether Excellence had spent the State's money to purchase the properties. TEA also points to Excellence's repeated admissions to the trial court that the suit involves an ownership dispute. Excellence's admissions are quoted below:

- "At the very least, under factual claims contained in Plaintiffs' live petition and the evidence presented and attached hereto, there is a fact issue as to ownership . . . ."

- "The crux of the immunity claim lies in the ownership of two properties Excellence 2000 purchased to operate its charter schools."

- "TEA has long completed all administrative functions of closing the schools and now wrongfully alleges it owns the properties instead of Plaintiff and

13

denied Plaintiff access to the two properties. Plaintiff disputes TEA's allegation that it owns the two properties and filed suit."

Excellence's admissions at prior proceedings that ownership of the properties was disputed does not mean that ownership is the crux of *this* suit. Further, true ownership of the subject property underlies all takings claims, and adjudicating an ownership dispute as a threshold issue does not place an otherwise valid takings claim outside of a court's jurisdiction. *See Tex. Dept. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 644 (Tex. 2004) ("It is fundamental that, to recover under the constitutional takings clause, one must first demonstrate an ownership interest in the property taken.") We therefore hold that Excellence has not creatively pleaded a trespass to try title claim and overrule TEA's first issue.

## III. Excellence Has Not Established a Viable Takings Claim.

The Texas Constitution's takings clause provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person[.]" Tex. Const. art. I, § 17(a). A claimant alleging a takings claim under the Texas Constitution must show: (1) an intentional act by a governmental entity, (2) that resulted in a taking of property, (3) for public use. *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 25, 26 (Tex. 2024); *Holland*, 221 S.W.3d at 643. To plead inverse condemnation, "a plaintiff must allege an intentional government act that resulted in the uncompensated taking of private property." *City of Hous. v. Carlson*, 451 S.W.3d 828, 831 (Tex. 2014). As stated above, "[i]f a defendant files a plea to the jurisdiction and establishes that the plaintiff has not alleged these elements and cannot amend its petition to do so, or if the defendant negates one of the elements in an evidentiary plea, the trial court must dismiss the takings claim." *Curadev*, 721 S.W.3d at 98.

TEA argues that it acted under the scope of the Charter Agreement and, thus,

did not possess the requisite "intent to take" under its eminent domain powers. It is well-established that "when the government acts pursuant to colorable contract rights, it lacks the necessary intent to take under its eminent domain powers and thus retains immunity from suit." *Id.* (citing *Holland*, 221 S.W.3d at 643). "This is because the State may 'wear two hats: the State as a party to the contract and the State as sovereign.'" *Holland*, 221 S.W.3d at 643 (quoting *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 599 (Tex. 2001)).

We are guided in our analysis by the similar circumstances in *Transformative Learning System v. Texas Education Agency*. 572 S.W.3d 281 (Tex. App.—Austin 2018, no pet.). In that case, Transformative Learning System ("TLS"), on appeal from a grant of TEA's plea to the jurisdiction, argued that TEA had committed an unconstitutional taking when TEA took possession of TLS's charter school property pursuant to Section 12.128 of the Education Code. *Id.* at 286, 290–91. Among the pertinent contract provisions considered by the court, the charter contract's terms and conditions included "applicable law," which the court interpreted as incorporating Section 12.128 of the Education Code. *Id.* at 291. The court therefore held that "TEA's actions [did] not constitute a physical taking" because "TLS [could not] show the requisite intent." *Id.* at 291–92. The court reasoned that "TEA was acting in its capacity as a party to the charter agreement, not as a sovereign exercising its power of eminent domain." *Id.* at 292.[4]

---

[4] We note that in contrast, Excellence in this case argues that the evidence presented to the trial court, particularly the 2023 Affidavit, creates a fact issue regarding whether it purchased the Properties with state or private funds. However, regardless of the extent to which Excellence was potentially deprived of a private property interest, TEA acted pursuant to the Charter Agreement and lacked the intent required for a taking with its eminent domain powers. *See Transformative Learning Sys.*, 572 S.W.3d at 292 ("[T]o the extent that TEA's actions deprived TLS of any possessory interest TLS might otherwise have had in the properties, TEA was acting in its capacity as a party to the charter agreement, not as a sovereign exercising its power of eminent domain.").

In addition, a prior case in the Third Court of Appeals also looked to a charter contract's use of "applicable law" to incorporate Section 12.128 of the Education Code. *Acad. of Careers and Techs., Inc.*, 499 S.W.3d at 136 & n.5. The court stated that the "[t]he state, as a party to the contract, may condition the grant of a charter on a promise to return to the state property that was funded by the state and used for state purposes, as section 12.128 requires." *Id.* at 136. In a footnote to this statement, the court noted that the charter contract allowed TEA to revoke or deny renewal for cause, including a "failure to comply with an applicable law or rule." *Id.* at 136 n.5.

Here, TEA states that it took possession of the Properties after Excellence's alleged violations of the Charter Agreement. TEA first points to Section 42 of the Charter Agreement, which conditions the contract's execution on the "full and timely compliance by [Excellence] with . . . applicable law." TEA then points to the provisions that Excellence allegedly violated, including Section 27's requirement that all interested financial transactions be "separately and clearly reflected in the accounting, auditing, budgeting, reporting, and record keeping systems of the charter school." Additionally, under Section 25, Excellence may not "apply, hold, credit, transfer, or otherwise make use of funds, assets or resources of the charter school for any purpose other than the operation of the charter school described in the charter." According to TEA, these provisions confirm that, after the violation of Sections 25 and 27 and subsequent revocation of the charter, TEA's seizure of the properties was "taken under the terms and scope of the Contract."

We agree. The Charter Agreement precludes Excellence from raising a fact issue with respect to whether TEA had the requisite intent to have effected a taking under Texas law. *See Transformative Learning Sys.*, 572 S.W.3d at 291. Similar to the charter contract in *Transformative Learning Systems*, Section 42 of the Charter Agreement conditions execution on Excellence's "full and timely compliance" with

"applicable law." Likewise, Section 2 states that the "terms of the charter include . . . applicable law . . . ." Section 12.128 of the Education Code would therefore be incorporated into the Charter Agreement, *see id.* at 291, and TEA would have obtained the Properties pursuant its terms.

We hold that TEA did not have the requisite intent to take the Properties and, thus, its actions do not constitute a physical taking.[5] Accordingly, Excellence has not established a viable takings claim warranting a waiver of TEA's sovereign immunity. The trial court therefore erred in denying TEA's plea to the jurisdiction.[6]

### CONCLUSION

Because Excellence has failed to establish a viable takings claim, we reverse the trial court's order denying TEA's plea and render judgment dismissing Excellence's suit for want of subject matter jurisdiction.

---

[5] TEA makes three additional arguments regarding Excellence's improper pleading: (1) Excellence has not pleaded that TEA has eminent domain powers, (2) TEA's actions did not result in a taking of *private* property, and (3) TEA did not acquire the property for public use. Because the contractual right argument disposes of the issue entirely, we do not reach the other arguments.

[6] We do not reach the issue of whether Excellence has standing to bring a takings claim. Standing is implicit in the concept of subject matter jurisdiction. *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (orig. proceeding) (per curiam). However, our determination that TEA acted pursuant to a colorable contract right suffices to conclude that TEA is protected by sovereign immunity and dismiss the case for want of subject matter jurisdiction. *See Miranda*, 133 S.W.3d at 224 ("In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit"); *Curadev*, 721 S.W.3d at 97 ("[T]he Texas Supreme Court has held that when the government acts pursuant to colorable contract rights, it lacks the necessary intent to take under its eminent domain powers and thus retains its immunity from suit."); *see also id.* at 107 (Brister, C.J., concurring and dissenting) ("When the government takes money or property belonging to *A* pursuant to a contract the government has with *A*, I agree there is no taking . . . ."); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam) ("[T]he law in Texas has been that absent the state's consent to suit, a trial court lacks subject matter jurisdiction."). Thus, determining whether Excellence has standing would be unnecessary to decide the appeal. *See* Tex. R. App. P. 47.1 (requiring the court of appeals to address only the issues "raised and necessary to final disposition of the appeal").

17

/s/ April Farris
April Farris
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.